# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ST. DOMINIC ACADEMY, a d/b/a of the ROMAN CATHOLIC BISHOP OF PORTLAND, a corporation sole; ROMAN CATHOLIC BISHOP OF PORTLAND, a corporation sole; and KEITH and VALORI RADONIS, on their own behalf and as next friends of their children K.Q.R., L.R.R., and L.T.R.,<br><br>*Plaintiffs*,<br><br>v.<br><br>A. PENDER MAKIN, in her personal capacity and in her official capacity as Commissioner of the Maine Department of Education, and JEFFERSON ASHBY, EDWARD DAVID, JULIE ANN O'BRIEN, MARK WALKER, and THOMAS DOUGLAS, in their personal capacities and in their official capacities as Commissioners of the Maine Human Rights Commission,<br><br>*Defendants*. | No. 2:23-cv-00246-JAW<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

## TABLE OF CONTENTS

                                                                                                     Page

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .......................................................................................................................1

ARGUMENT ................................................................................................................................2

    I.   Defendants' efforts to avoid this Court's jurisdiction are meritless. ...................................2

        A.  *Pullman* abstention does not apply. ............................................................................2

        B.  This lawsuit is ripe. .....................................................................................................3

    II.  Plaintiffs are likely to succeed on the merits. .....................................................................4

        A.  Maine's rules violate the Free Exercise Clause by targeting religion. .......................4

        B.  Maine's rules re-impose the same restrictions invalidated in *Carson*. .......................4

        C.  Maine's rules are not generally applicable. ................................................................4

        D.  Maine's rules infringe on parents' rights to direct their children's religious education. .............................................................................................6

        E.  Maine's "equal religious expression" rule compels speech by religious schools. ...................................................................................................6

        F.  Maine's "equal religious expression" rule violates the right of expressive association. ..................................................................................7

        G.  Maine's rules invite excessive entanglement under *Carson*. .....................................7

        H.  Maine's rules violate the First Amendment right of religious autonomy. .................8

        I.  Maine's rules impose unconstitutional conditions on the program. ..........................9

        J.  Maine's rules cannot satisfy strict scrutiny. ...............................................................9

    III.  The remaining injunction factors favor the Plaintiffs. ....................................................10

CERTIFICATE OF SERVICE ................................................................................................12

CERTIFICATE OF COMPLIANCE ......................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*303 Creative LLC v. Elenis*,
   143 S. Ct. 2298 (2023) .................................................................................................. 6, 7, 10

*BLinC v. Univ. of Iowa*,
   991 F.3d 969 (8th Cir. 2021) .................................................................................................. 5

*Bob Jones Univ. v. United States*,
   461 U.S. 574 (1983) ................................................................................................................ 9

*Burwell v. Hobby Lobby*,
   573 U.S. 682 (2014) ............................................................................................................ 5-6

*Carson v. Makin*,
   142 S. Ct. 1987 (2022) ..................................................................................................... 6, 7, 9

*CLS v. Martinez*,
   561 U.S. 661 (2010) ................................................................................................................ 5

*Employment Division v. Smith*,
   494 U.S. 872 (1990) ................................................................................................................ 6

*Fulton v. City of Philadelphia*,
   141 S. Ct. 1868 (2021) .......................................................................................................... 10

*Grove City Coll. v. Bell*,
   465 U.S. 555 (1984) ................................................................................................................ 9

*Hurley v. Irish-American Gay, Lesbian, and Bisexual Grp. of Boston*,
   515 U.S. 557 (1995) ............................................................................................................ 6, 7

*IVCF v. Univ. of Iowa*,
   5 F.4th 855 (8th Cir. 2021) ..................................................................................................... 5

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*,
   138 S. Ct. 1719 (2018) .......................................................................................................... 10

*Obergefell v. Hodges*,
   576 U.S. 644 (2015) .......................................................................................................... 9-10

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
   140 S. Ct. 2049 (2020) ............................................................................................................ 8

*Project Veritas Action Fund v. Rollins*,
    982 F.3d 813 (1st Cir. 2020)..................................................................................................3

*R.I. Ass'n of Realtors, Inc. v. Whitehouse*,
    199 F.3d 26 (1st Cir. 1999)....................................................................................................3

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984)...............................................................................................................7

*SBA List v. Driehaus*,
    573 U.S. 149 (2014)...............................................................................................................3

*SFFA v. President & Fellows of Harvard Coll.*,
    143 S. Ct. 2141 (2023)...........................................................................................................9

*Tandon v. Newsom*,
    141 S. Ct. 1294 (2021)...........................................................................................................4

*Thomas v. Rev. Bd.*,
    450 U.S. 707 (1981)...............................................................................................................1

*W. Va. Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943)...............................................................................................................9

*Whole Woman's Health v. Jackson*,
    142 S. Ct. 522 (2021)...........................................................................................................10

*Wisconsin v. Constantineau*,
    400 U.S. 433 (1971)...............................................................................................................2

**Statutes**

20 U.S.C. § 1681................................................................................................................................9

5 M.R.S. § 4553.................................................................................................................................5

5 M.R.S. § 4566.................................................................................................................................3

5 M.R.S. § 4573-A.............................................................................................................................8

5 M.R.S. § 4602............................................................................................................................3, 6

**Other Authorities**

*Our Mission,* Cheverus High School .................................................................................................1

iv

## INTRODUCTION

Maine's opposition offers a series of concessions that make this motion—and this case—easy to resolve. First, Maine admits that it cannot apply the employment provisions of the Maine Human Rights Act against Plaintiffs because of their constitutional rights to apply religious standards to their hiring. Opp.8-10, 19-20. Second, it admits that it is trying to require religious schools to permit expression of "dissenting religious views." *Id.* at 10. Third, it asserts that the government—not the Bishop and not the parents—must determine what students "are called or what they wear while at school." *Id.* at 10-11.

Even without *Carson*, the First Amendment would require an injunction against these illegal and entangling government efforts to regulate hiring, religious expression, and student life at a religious school. But the State does not even bother to explain how Maine (much less this Court) could possibly read *Carson* to allow it to continue excluding religious schools this way.

Instead, Maine's primary argument—which it recycles time and again across counts—is that because another Maine school, Cheverus, has decided that it can comply with these rules, St. Dominic must too. This misapprehends the facts and misapplies the law. Facts first: Cheverus is not the "Bishop's own school[]" and he certainly does not "operate" it. Opp.1, 3. Cheverus refers to itself as "[a]n inclusive Jesuit Catholic" school, and it is "operated by the Society of Jesus," not the Bishop. *See Our Mission*, Cheverus High School, www.cheverus.org; Pelletier Aff. ¶ 4. Maine knows this because both St. Dominic and Cheverus must register with the state each year, separately. *Id.* ¶ 7-9. And now the law: it is clearly established that the Bishop and the Radonises do not lose their rights because the Cheverus Jesuits have decided they can permit things that Plaintiffs cannot. *Thomas v. Rev. Bd.*, 450 U.S. 707, 715-16 (1981). Religious liberty does not work that way. Maine's *Pullman* abstention and ripeness arguments fare no better.

Beyond this, Maine just ignores *Carson*, *Trinity Lutheran*, and *Espinoza*, and instead attempts to wrap itself in older cases like *Smith*, *Martinez*, and *Bob Jones*. But Maine's freshly passed discriminatory laws cannot be saved by dusty lawbooks. The town-tuitioning program is neither neutral (the State does not deny making these changes to exclude religious schools) nor generally

applicable (the State openly admits that it does not pursue its stated interests across the board). Nor is a religious school like St. Dominic somehow a public forum under *Martinez*. And the Supreme Court has never applied *Bob Jones* to override the First Amendment in this context, instead repeatedly (and recently) confirming that Maine's asserted interests fail. All the recent cases Maine tries to ignore—*Fulton*, *Tandon*, *Masterpiece*, *303 Creative*, and *Carson*—cement its loss here.

For decades, Plaintiffs and others like them have been illegally and wrongfully excluded from town tuitioning. The Supreme Court resolved that issue—or at least thought it had—more than a year ago. Plaintiffs respectfully request a preliminary injunction before August 31, so they and their children are not forced to endure yet another school year on the outside looking in.

## ARGUMENT

**I. Defendants' efforts to avoid this Court's jurisdiction are meritless.**

**A.** ***Pullman*** **abstention does not apply.**

Defendants' novel *Pullman* argument—that this Court should abstain because the Act is ambiguous—fails because Plaintiffs' claims do not depend on any ambiguous provisions of state law. No hypothetical future state case would shed additional light on Plaintiffs' claim that L.D. 1688 targeted their religious exercise. Nor would a state court be better placed to assess whether the law complies with *Carson*. The same could be said for the law's employment provisions, which Maine concedes conflict with "binding" Supreme Court precedent. Opp.9-10. And the list goes on.

The only ambiguity Maine points to is whether the Act will be interpreted to burden Plaintiffs' religious exercise in each and every way that Plaintiffs identify.[1] Opp.7. But Maine concedes that the Act will burden Plaintiffs in at least some ways (*id.* at 10-11), and that is enough. "Hence the naked question, uncomplicated by an unresolved state law, is whether" the Act is "unconstitutional." *Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971). The court "should not abstain but should proceed to decide the federal constitutional claim." *Id.*

---

[1] Maine was much less uncertain about the scope of the Act in *Crosspoint Church*, where it told this Court that the Act requires Bangor Christian School to "accept all willing students" and emphasized that the school "would likely not be allowed to prohibit such a student from expressing his or her own religious beliefs." Def's Opp. to Mot. for Prelim. Inj. at 10-11 & n.12, *Crosspoint Church v. Makin*, No. 23-146 (D. Me. Apr. 28, 2023).

2

### B. This lawsuit is ripe.

Maine asserts two ripeness arguments: first, future enforcement is speculative because the Act is only enforced through individual complaints[2] that might never be filed, and second, harm to St. Dominic is speculative because it might later succeed in raising a valid legal defense. Opp.8. Both ignore controlling Supreme Court and Circuit caselaw. In *SBA List v. Driehaus*, the Supreme Court concluded that the possibility of enforcement through individual complaints made the likelihood of prosecution *greater*, not less. 573 U.S. 149, 163-64 (2014). And it also held that the existence of a valid legal defense does not defeat ripeness because "[n]othing in this Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." *Id.* at 163.

Thus, in the First Circuit, a case is ripe where the plaintiff has "concrete plans to engage immediately (or nearly so) in an arguably proscribed activity." *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 826 (1st Cir. 2020). That is this case. St. Dominic is preparing to apply for the town-tuitioning program for the 2023-24 school year. Compl. ¶ 15. But the school intends to continue giving admission preference to Catholic students, *id.* ¶¶ 107, 136, handling sensitive issues surrounding sexual orientation and gender identity in accordance with Catholic teaching, *id.* ¶¶ 137-46, requiring employees to uphold and support Catholic teachings in both their professional and personal capacities, *id.* ¶¶ 38-39, 147-49, and infusing Catholic teaching into all aspects of the school while limiting the expression of anti-Catholic religious viewpoints on campus, *id.* ¶ 135. Maine forbids schools that accept town-tuitioning funds from engaging in any of those activities. *See* 5 M.R.S. § 4602. Maine admits that at least some of these activities are forbidden by the Act. Opp.10-11. St. Dominic therefore has "concrete plans" to engage in "proscribed activity" that it believes to be constitutionally protected. *R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999). The case is ripe.

---

[2] This is false: the Human Rights Commission has authority to investigate violations of the Act. 5 M.R.S. § 4566.

## II. Plaintiffs are likely to succeed on the merits.

### A. Maine's rules violate the Free Exercise Clause by targeting religion.

Maine does not deny that the Act was amended in anticipation of *Carson* or that its allies have widely celebrated its success in excluding religious schools. Opp.13; *see* Mot.8-9. Maine's only defense is that it revised the Act to avoid "fund[ing] discrimination." Opp.13. But this is circular: the 2021 revisions dramatically expanded the scope of prohibited "discrimination." Mot.6-7. The revisions added a new rule mandating equal religious expression, added a new ban on religious discrimination, and stripped out the religious exemption that previously gave religious schools autonomy to handle sensitive issues surrounding gender and sexuality. *Id.* Maine never disputes—and thereby concedes—that these changes were keyed to practices of religious schools. *Id.* Changing the rules because you see religious schools coming is targeting religion.

### B. Maine's rules re-impose the same restrictions invalidated in *Carson*.

Maine cites *Carson* just once, in its statement of facts. Opp.3. It does not cite *Espinoza* or *Trinity Lutheran* at all. Nor does it address Plaintiffs' argument that the Act reimposes the non-sectarian exclusion that *Carson* struck down, thus conceding the merits on this claim. Maine's only defense is to point to Cheverus. But Maine cannot escape liability because another school is willing to comply with its illegal requirements as the price of participation in Maine's program.

### C. Maine's rules are not generally applicable.

"[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat any comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. at 1296 (per curiam). And "whether two activities are comparable" is "judged against the asserted government interest." *Id*. The only interests Maine has asserted are in "eradicating discrimination" (Opp.18) and in "ensuring that public money is not used to fund discrimination." Opp.13. Although Maine admits that it scrambled to remove the exemption for single-sex schools as a result of *Crosspoint Church*, it concedes that the Act's educational nondiscrimination provisions still do not apply to the out-of-state and international schools that Maine approves for town-tuitioning purposes. Opp.14. Maine likewise concedes

4

that these provisions do not apply to private post-secondary schools at all. Opp.14; *see* 5 M.R.S. § 4553(2-A). Each of these exemptions undermines Maine's asserted interests in the same way that an exemption for Plaintiffs would.

*Out of state schools.* Maine does not have to permit out-of-state schools to participate in its town-tuitioning program, but having done so, it cannot treat all-girls boarding schools in Connecticut better than co-ed Catholic schools in Maine. Allowing families to choose out-of-state schools that violate the Act by restricting admissions on the basis of sex undermines Maine's interests in "eradicating discrimination" and keeping public funds away from allegedly discriminatory schools in the same way as allowing them to choose Catholic schools.

*Private colleges.* Maine has similarly chosen to pursue its interests with respect to Catholic high schools, but not with respect to private colleges. Maine weakly protests that colleges and high schools are "not comparable," but it fails to explain why its claimed interests in "eradicating discrimination" and keeping public funds away from allegedly discriminatory schools can be abandoned for colleges but not high schools. Opp.14. For both of these reasons, Maine's laws are subject to, and will ultimately fail under, strict scrutiny.[3]

Maine responds that there's nothing to see here—because it is possible that a hypothetical future state court could conclude that some of the Plaintiffs' religious policies might be permitted under the Act. Opp.9-11. That cold comfort aside, Maine admits that the Act requires St. Dominic to permit students to express "dissenting religious views," no matter how disrespectful towards the Catholic faith, and that the Act gives the Commission authority to determine what students "are called or what they wear" while at the Bishop's schools. Opp.10-11. These concessions are more than enough to establish a burden on Plaintiffs' free exercise right now. *See Burwell v. Hobby Lobby*, 573 U.S. 682, 725 (2014). Plaintiffs "sincerely believe that" complying with the Act "lies

---

[3] Maine's reliance on *CLS v. Martinez* is puzzling. 561 U.S. 661 (2010). *Martinez* determined that the school had consistently applied a neutral rule requiring all recognized student groups to open their leadership to all students. *Id.* at 694. Maine has (rightly) never argued that the town-tuitioning program is subject to forum analysis, and in any case its exclusion of out-of-state, international, and post-secondary schools from the Act means that its policies are *not* consistently applied, and strict scrutiny attaches under both the Free Exercise and Free Speech clauses. *See, e.g.*, *BLinC v. Univ. of Iowa,* 991 F.3d 969, 985 (8th Cir. 2021); *IVCF v. Univ. of Iowa*, 5 F.4th 855, 867 (8th Cir. 2021).

on the forbidden side of the line, and it is not for [Maine] to say that their religious beliefs are mistaken or insubstantial." *Id.* at 725.

### D. Maine's rules infringe on parents' rights to direct their children's religious education.

Even under *Smith*, violations of parents' rights to direct the religious education of their children trigger strict scrutiny. 494 U.S. at 881 (citing *Yoder*, 406 U.S. 205). Complying with the Act interferes with St. Dominic's ability to provide the Radonis' children with a Catholic education. Mot.13. Maine protests that this amounts to a demand for a publicly funded religious education. Opp.16. But that argument was considered and rejected in *Espinoza* and *Carson*, which held that "[a] State need not subsidize private education," but "once a State decides to do so, it cannot disqualify some private schools solely because they are religious." *Carson*, 142 S. Ct. at 1997 (quoting *Espinoza*, 140 S. Ct. at 2261). Ignoring *Carson* does not make it go away, and having created the town-tuitioning program, Maine cannot exclude the Radonises from it because they seek a Catholic education at an otherwise-qualified school like St. Dominic. That means strict scrutiny, which Maine cannot meet.

### E. Maine's "equal religious expression" rule compels speech by religious schools.

The Act's religious expression provision forces religious schools like St. Dominic to modify their religious message by allowing all other religious expression on campus. *See* 5 M.R.S. § 4602(5)(D). Maine concedes it. Opp.10. The Supreme Court made it clear in *Hurley* that the government cannot "compel [a] speaker to alter [its] message by including one more acceptable to others." 515 U.S. at 581. And the Court reiterated just a few weeks ago that the government cannot "force an individual to include other ideas with his own speech that he would prefer not to include." *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2312 (2023).

Yet that is what the religious-expression provision does. Religious schools like St. Dominic seek to convey a consistent religious message on campus. But whenever a school engages in religious expression, the Act now requires the school to allow anyone else on campus to share their own religious expression. That alters the school's religious message by forcing it to include a

6

message on its campus with which it disagrees, something at odds with "the very core of the mission of a private religious school." *Carson*, 142 S. Ct. at 2001.

It is no answer for Maine to say that "the speech would be that of students, not the Plaintiffs." Opp.17. The Supreme Court rejected that argument in *Hurley* when it held that forcing a speaker to include the message of another person impermissibly alters the speaker's message. Maine-Catholic schools get the same expressive rights as Irish-Bostonian parade organizers. 515 U.S. at 572-73 ("[E]very participating unit affects the message conveyed by the private organizers," meaning that including an additional parade unit would "alter the expressive content of [the] parade."). *303 Creative* confirms it: St. Dominic's "does not forfeit constitutional protection simply by combining multifarious [student] voices" in the "final product" of its expressive, Catholic mission. 143 S. Ct. at 2313 (quoting *Hurley*, 515 U.S. at 569).

**F.  Maine's "equal religious expression" rule violates the right of expressive association.**

St. Dominic and the Radonises want to associate to educate the Radonis children according to the Catholic faith. Maine cites *Roberts* and argues that "allowing students to express their own religious views" would not impose a "serious burden" on Plaintiffs' freedom of association. Opp.18. But *Roberts* does not help Maine, because it expressly distinguishes the "raising and education of children" from the broad civic association in that case. *Roberts*, 468 U.S. at 619-20. The Act burdens Plaintiffs' association by precluding the Radonises from using town-tuitioning funds at St. Dominic unless St. Dominic is willing to modify its Catholic message by allowing an equal amount of non-Catholic religious expression at its school. Mot.15. Maine's asserted nondiscrimination interests do "not justify such a severe intrusion on the [Plaintiffs'] rights to freedom of expressive association." *303 Creative*, 143 S. Ct. at 2315 (quoting *BSA v. Dale*, 530 U.S. at 659).

**G.  Maine's rules invite excessive entanglement under *Carson*.**

*Carson* holds that "[a]ny attempt to … scrutinize[e] whether and how a religious school pursues its educational mission would … raise serious concerns about state entanglement with religion." 142 S. Ct. at 2001 (emphasis added). Maine ignores *Carson* and instead asserts that the Commission is fully entitled to engage in "relevant factual inquiries" under *Our Lady*. Opp.19.

7

But *Our Lady* closely circumscribed discovery to threshold issues like whether the school is religious and whether the employee has been entrusted with religious duties. 140 S. Ct. at 2069. Once these threshold questions are answered in the affirmative, the inquiry is at an end. *See id.* at 2055.

Maine, by contrast, muses about how much the Commission may need to investigate before making a decision about the validity of Plaintiffs' religious policies *on the merits*. Opp.19. This directly conflicts with *Our Lady* and *Carson*. It is difficult to imagine a more entangling inquiry than one which asks how much non-Catholic expression a Catholic school must permit. As *Carson*, *Catholic Bishop*, *Hosanna-Tabor*, and *Our Lady* have held, applying the Act to Plaintiffs' internal religious policies would violate clearly established constitutional law. Mot.17-18.

**H.  Maine's rules violate the First Amendment right of religious autonomy.**

Departing from the Commission's written testimony to the Legislature, Mot.18 n.18, Maine concedes that the ministerial exception applies to "many—and perhaps all" of St. Dominic's teachers and that, under the religious autonomy doctrine, "St. Dominic is free to employ only Catholics who subscribe to the Bishop's religious tenets." Opp.10, 19. But the Act does not acknowledge the ministerial exception, and Maine argued at length in *Carson* that the "religious tenets" exemption would not apply if a religious school participated in town tuitioning. Mot.18 n.17. At a minimum, then, Plaintiffs are entitled to a preliminary injunction on Counts V and VI.

But Maine still fights the law, in three ways. First, Maine fights the Act itself, which says that religious organizations "may require that all applicants and employees conform to the religious tenets of that organization"—without the "co-religionist" gloss that Maine adds here. 5 M.R.S. § 4573-A. Second, Maine fights *Our Lady*, which specifically rejected a rule that would have limited religious hiring rights to "co-religionists." *Our Lady* held that deciding questions like whether "Orthodox Jews and non-Orthodox Jews" or "Presbyterians and Baptists" were co-religionists "would risk judicial entanglement in religious issues." 140 S. Ct. at 2068-69. And third, Maine asserts that its concession regarding religious tenets only applies so long as the Commission or a future state court *agrees* with those religious tenets—if instead it concludes that a religious policy relating to gender identity, marriage, or sexuality is discriminatory, the religious exemption is lost.

Opp.20 n.16. That infringement on autonomy is also viewpoint discrimination, which is illegal under any understanding of the First Amendment. *Barnette*, 319 U.S. at 642 ("If there is any fixed star in our constitutional constellation …").

**I. Maine's rules impose unconstitutional conditions on the program.**

Maine asserts that town tuitioning is a "benefit that give religious schools an option" if they do not want to comply with the Act. Opp.21. But this argument was rejected in *Carson*. 142 S. Ct. at 1997. Maine likewise asserts that it is "not reaching outside the tuition program when it requires schools who will be educating children at public expense to comply with its anti-discrimination law." Opp.21. But *Carson* rejected this argument as well when it characterized Maine's benefit narrowly as "*tuition* at a public *or* private school, selected by the parent, with no suggestion that the 'private school' must somehow" imitate public schools. 142 S. Ct. at 1998-99 (emphasis added). Carson cannot be sidestepped by labeling participation by religious schools an "option" and a "benefit" such that Maine can dictate the details of who may carry out a school's religious mission and how they may do so.

Eschewing *Carson*, Maine instead reaches for the 1984 case *Grove City Coll. v. Bell*. Opp.21. But unlike the Act, the Title IX nondiscrimination requirement upheld in *Grove City* "[did] not, on its face, impose institution-wide obligations." 465 U.S. 555, 574 (1984). And also unlike the Act, Title IX avoids imposing unconstitutional conditions by including a broad religious exemption. 20 U.S.C. § 1681(3). *Grove City* and Title IX do not support Maine's position; they show how extreme it is.

**J. Maine's rules cannot satisfy strict scrutiny.**

All of this means that Maine must pass strict scrutiny, which it cannot do. In *Bob Jones Univ. v. United States*, the government passed strict scrutiny based on its "fundamental, overriding interest in eradicating racial discrimination in education." 461 U.S. 574, 604 (1983). But as the Supreme Court recognized this term, even that interest has limits. *SFFA v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2173 (2023). The Court has never applied the same reasoning to exclude religious believers like the Plaintiffs because of their "decent and honorable" religious

9

beliefs regarding sexuality. *Obergefell v. Hodges*, 576 U.S. 644, 672 (2015). Instead, it has repeatedly held that when an antidiscrimination law is applied in a way that violates First Amendment rights, the Constitution must prevail. *Masterpiece*, 138 S. Ct. at 1732; *Fulton*, 141 S. Ct. at 1882; *303 Creative*, 143 S. Ct. at 2315.

Maine has asserted two interests: "eradicating discrimination" and preventing public money from being used to "fund discrimination." Opp.13, 18. But Maine "cannot justify" denying Plaintiffs "an exception for its religious exercise" on these facts. *Fulton*, 141 S. Ct. at 1882. Maine often chooses not to pursue them at all, as when giving money to out of state schools and in-state private colleges not covered by the Act. This fatally undermines its "contention that its non-discrimination policies can brook no departures." *Id.* Maine "offers no compelling reason why it has a particular interest in denying an exception to [Plaintiffs] while making them available to others." *Id.*

Indeed, Maine fails to treat its nondiscrimination interests as compelling *in this case*. Maine asserts that "[t]he education children receive has *nothing to do* with" students' adoption of opposite-sex pronouns or clothing "while at school." Opp.11 (emphasis added). If that is so, then Maine can have no interest in enforcing the Act's rules regarding gender identity at St. Dominic. And Maine also argues at length that Plaintiffs may continue many of their existing hiring, admissions, and religious practices while participating in the program. Opp. 9-11. Maine cannot possibly have a compelling interest in excluding schools whose religious policies it defends in this way.

### III. The remaining injunction factors favor the Plaintiffs.

Maine's *ipse dixit* assertions as to the remaining injunction factors collapse into their arguments on Plaintiffs' likelihood of success. And preventing Defendants from enforcing the challenged provisions would provide significant relief to Plaintiffs. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 530, 539 (2021) (allowing pre-enforcement challenge against state officials possessing "specific [enforcement] authority" even though statute primarily "direct[ed] enforcement 'through … private civil actions'"). For all these reasons, a preliminary injunction should issue.

Respectfully submitted,

/s/ *Adèle Auxier Keim*
Adèle Auxier Keim*
Mark L. Rienzi*
Daniel D. Benson*
Benjamin A. Fleshman*
Michael O'Brien*†
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave., NW
 Suite 400
Washington, DC 20006
Telephone: (202) 955-0095
Fax: (202) 955-0090

\* Admitted *pro hac vice*
† Not a member of the DC Bar; admitted in Louisiana. Practice limited to cases in federal court.

/s/ *James B. Haddow*
James B. Haddow
Maine Bar No. 003340
Petruccelli, Martin & Haddow LLP
Two Monument Square, Suite 900
Portland, ME 04112-8555
Telephone: (207) 775-0200 x 6413
Fax: (207) 775-2360

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    I certify that on July 19, 2023, I caused the foregoing to be served electronically via the Court's electronic filing system on all parties.

<u>/s/ *Adèle Auxier Keim*</u>
Adèle Auxier Keim

Dated: July 19, 2023

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the form and length requirements of Local Rule 7(c), (d), as modified by the Court's order dated July 14, 2023, Dkt.28, because it has 10 pages and has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Times New Roman font.

/s/ *Adèle Auxier Keim*<br>Adèle Auxier Keim

Dated: July 19, 2023