UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ST. DOMINIC ACADEMY, a d/b/a of the ROMAN CATHOLIC BISHOP OF PORTLAND, et al. )<br><br>Plaintiffs, )<br><br>v. )<br><br>A. PENDER MAKIN, in her personal and official capacity as Commissioner of the Maine Department of Education, et al., )<br><br>Defendants. ) | Civil Action No. 23-cv-00246-JAW |

**DEFENDANTS' MOTION TO DISMISS PERSONAL CAPACITY
CLAIMS, WITH INCORPORATED MEMORANDUM OF LAW**

The central issue in this lawsuit is whether Maine may constitutionally apply its general anti-discrimination law – the Maine Human Rights Act ("MHRA") – to a religious school approved to receive public tuition payments. Seeking declaratory and prospective injunctive relief, plaintiffs sued the Commissioner of the Maine Department of Education ("DOE") and the five Maine Human Rights Commissioners in their official capacities. In that respect, this lawsuit is like many others where challengers of state laws sue government actors in their official capacities for declaratory and injunctive relief. *See Ex parte Young*, 209 U.S. 123 (1908). Plaintiffs go a step further, though, and seek to impose monetary damages on the defendants by suing them in their personal capacities. But plaintiffs do not allege that the defendants personally engaged in any unlawful conduct, and the personal capacity claims border on the frivolous and should be dismissed.

The claims against the DOE Commissioner are premised solely on an argument made by the State, as represented by its Attorney General, in prior litigation in which the DOE

Commissioner was sued in her official capacity. There are no allegations attributing this argument to the Commissioner and, in any event, making a legal argument to a court did not somehow violate the Constitution. The claims against the Maine Human Rights Commissioners are premised on certain actions taken by the Maine Human Rights Commission ("MHRC") as an official body – submitting testimony to a legislative committee, proposing amendments to the MHRA, and issuing guidance on interpreting the MHRA. Plaintiffs do not allege facts regarding any Commissioner's personal involvement in these actions. That aside, offering legislative testimony, proposing statutory amendments, and issuing interpretative guidance no more violate the Constitution than does making an argument in litigation. Plaintiffs thus fail to state a personal capacity claim against any defendant. And even if they were able to state such a claim, defendants would be entitled to qualified immunity because plaintiffs cannot establish that a reasonable state official should have been on notice that any of the alleged conduct was unlawful.

In further support, defendants rely upon the following Memorandum of Law:

## MEMORANDUM OF LAW

### Legal Background

In Maine, a school administrative unit ("SAU") that neither operates a secondary school nor contracts for schooling privileges "shall pay the tuition . . . at the public school or the approved private school of the parent's choice at which the student is accepted." 20-A M.R.S. § 5204(4). By statute, a private school approved for the receipt of public funds for tuition purposes must be "a nonsectarian school." 20-A M.R.S. § 2951(2). Last year, though, the United States Supreme Court held that the nonsectarian requirement violates the First Amendment's Free

Exercise Clause. *Carson v. Makin*, 142 S. Ct. 1987, 2002 (2022). Sectarian schools may thus now be approved for the receipt of public funds.

At issue in this lawsuit is the application of the MHRA to sectarian schools participating in the tuition program. The MHRA prohibits discrimination against protected classes in, among other things, education and employment. 5 M.R.S. §§ 4571-4577, 4601-4604. A private school is an "educational institution" (and thus subject to the education discrimination provisions) only if it is approved for tuition purposes. 5 M.R.S. § 4553(2-A). Relevant to this lawsuit are three changes Maine's legislature made to the MHRA's education provisions in 2021 as part of a larger bill amending many parts of the MHRA. Maine Pub. L. 2021, ch. 366. First, the legislature added ancestry, color, and religion to the categories of protected classes. *Id.*, § 19 (*codified at* 5 M.R.S. § 4602(1)). Second, the legislature struck a prior provision exempting all religious organizations from the prohibition against sexual orientation discrimination in education and replaced it with a provision stating: "Nothing in this section . . . [r]equires a religious corporation, association or society that does not receive public funding to comply with this section as it relates to sexual orientation or gender identity." *Id.* (*codified at* 5 M.R.S. § 4602(5)(C)). Third, the legislature declared that educational institutions are not required "to participate in or endorse any religious beliefs or practices," but that "to the extent that an educational institution permits religious expression, it cannot discriminate between religions in so doing." *Id.* (*codified at* 5 M.R.S. § 4602(5)(D)).

The MHRA's employment provisions are also relevant. These provisions prohibit discrimination based on, among other things, race or color, sex, sexual orientation or gender identity, physical or mental disability, religion, age, ancestry, national origin, or familial status. 5 M.R.S. § 4572. However, a religious organization is permitted to give preference in

3

employment to members of its religion and may require that all applicants and employees conform to the organization's religious tenets.  5 M.R.S. § 4573-A(3); *see also* 5 M.R.S. § 4553(4).  Further, religious organizations that do not receive public funds are exempt from the provisions prohibiting employment discrimination on the basis of sexual orientation or gender identity.  5 M.R.S. § 4553(10)(G).

### Plaintiffs' Allegations

The plaintiffs are St. Dominic Academy (a Catholic school), the Roman Catholic Bishop of Portland, and a Catholic family who would like to send their children to St. Dominic (Keith and Valori Radonis and their three children).  Complaint, ¶¶ 4, 14, 17-19.  They allege that the MHRA's education and employment provisions deter St. Dominic from applying to be approved for tuition purposes.  *Id*., ¶ 124.  They argue that the First Amendment and the Equal Protection Clause preclude Maine from applying these MHRA provisions to St. Dominic even if St. Dominic were approved for tuition purposes.  *Id*., ¶¶ 169-280.

The plaintiffs name as defendants DOE Commissioner A. Pender Makin and Maine Human Rights Commissioners Jefferson Ashby, Edward Davis, Julie Ann O'Brien, Mark Walker, and Thomas Douglas.  *Id*., ¶¶ 20-25.  All defendants are sued in both their personal and official capacities.  *Id*.  Plaintiffs assert ten claims, and all are brought pursuant to 42 U.S.C. § 1983.  *Id*., ¶¶ 169-280.  Nine of the claims are premised on alleged violations of the First Amendment and one is premised on an alleged violation of the Equal Protection Clause.  *Id*.  Plaintiffs seek not only declaratory and injunctive relief, but also monetary damages.  Complaint's Prayer for Relief, ¶¶ g, h.  As discussed below, plaintiffs do not allege that any defendant personally violated the Constitution and the personal capacity claims should thus be dismissed.

## ARGUMENT

### Applicable Legal Standard

In ruling on a motion to dismiss, the Court "accept[s] as true all well-pleaded facts set forth in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011); *see also Román–Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 45 (1st Cir. 2011). Although there need not be "detailed factual allegations," a plaintiff must make "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Lister v. Bank of America, N.A.*, 790 F.3d 20, 23-24 (1st Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### *Plaintiffs Fail to State a Personal Capacity Section 1983 Claim Against Any Defendant.*

Section 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ." 42 U.S.C. § 1983. It is well established that "vicarious liability is inapplicable to . . . § 1983 suits" and that a plaintiff must thus "plead that each Government-official defendant, through the official's own individual

5

actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Grajales v. Puerto Rico Ports Authority*, 682 F.3d 40, 47 (1st Cir. 2012); *Marrero–Rodriquez v. Municipality of San Juan*, 677 F.3d 497, 503 (1st Cir. 2012). "As a general matter, liability for public officials under section 1983 arises only if 'a plaintiff can establish that his or her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization.'" *Grajales v. Puerto Rico Ports Authority*, 682 F.3d 40, 47 (1st Cir. 2012) (quoting *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1, 16 (1st Cir.2011)). Here, plaintiffs do not allege that Commissioner Makin or the Maine Human Rights Commissioners, through their own individual actions, violated the First Amendment or Equal Protection Clause.

## Commissioner Makin

The only allegation of misconduct by Commissioner Makin is that in the *Carson* litigation, she "argu[ed] that no school would accept town tuitioning funds because it would mean losing their religious hiring rights." *Id*., ¶ 10; *see also id.*, ¶ 155. Plaintiffs seem to allege that the Commissioner was wrong about the legal ramifications of a school accepting public funds. It is impossible to see, though, how an incorrect statement of law in an argument to a court could be a violation of the First Amendment or the Equal Protection Clause. Moreover, the statement was not wrong. The State never argued in *Carson* that schools approved for tuition purposes would "lose[] their religious hiring rights." Rather it argued that "the Maine Human Rights Act will prohibit them from considering sexual orientation in their employment

6

decisions." *Carson v. Makin*, 401 F. Supp. 3d 207, 209 (D. Me. 2019). This is undisputedly a correct statement of Maine law. 5 M.R.S. § 4553(10)(G).[1]

In any event, statements in briefs filed in the *Carson* litigation cannot be personally attributed to Commissioner Makin. The Commissioner was sued solely in her official capacity (as was the Attorney General). *Carson v. Makin*, 979 F.3d 21 (1st Cir. 2020). Thus, Commissioner Makin did not personally make any statements. Moreover, because the Commissioner was sued only in her official capacity, the Attorney General controlled the litigation pursuant to 5 M.R.S. § 191(3). *See Superintendent of Ins. v. Att'y Gen.*, 558 A.2d 1197, 1200 (Me. 1989). Plaintiffs make no allegations that Commissioner Makin somehow directed or influenced what the Attorney General chose to argue about the interplay between the MHRA and schools choosing to participate in the tuition program. Plaintiffs thus fail to state a personal capacity claim against Commissioner Makin.

Maine Human Rights Commissioners

Similarly, plaintiffs do not allege that any Maine Human Rights Commissioner personally violated the First Amendment or the Equal Protection Clause. Giving the Complaint the broadest and most generous reading, plaintiffs appear to attempt to impose personal liability on the Commissioners for the following:

- In testimony to a legislative committee in April 2021, the Commission "stated its view that, under the [MHRA], religious schools that accept public funds lose their religious hiring rights." Complaint, ¶ 10 (citing https://perma.cc/7B9E-2J2X); *see also id.*, ¶¶ 156, 175, 228.

---

[1] Schools approved for tuition purposes would still be allowed to limit employment to members of their religions and require that all applicants and employees conform to their religious tenets, 5 M.R.S. § 4573-A(2), and despite what plaintiffs suggest, the State never argued otherwise.

- In 2021, it was the Commission that proposed the three changes to the education provisions in the MHRA, as described above. *Id.*, ¶¶ 106-109.

- In 2023, the Commission testified in support of a bill repealing a provision exempting single-sex private schools from the definition of "educational institution" and that "on information and belief," the Commission did so "for the purpose of trying to strengthen their arguments" in another lawsuit challenging application of the MHRA to sectarian schools. *Id.*, ¶¶ 129-130.

- In 2016, the Commission "interpreted the [MHRA's] gender-identity nondiscrimination provision to require a school to facilitate a student's efforts to change his or her gender identity even if the school knows that the student's parents object" and to require schools "to use a student's preferred name and pronouns, and if the student so requests, to 'require[]' all employees and 'instruct' other students to do so as well." Complaint, ¶¶ 141-142.

Notably, plaintiffs do not allege facts regarding any specific Commissioner's direct involvement in these actions and instead simply allege that they were conducted by the "Commission." It cannot simply be assumed that each of the five Commissioners is responsible for every action taken by the Commission. Indeed, plaintiffs do not even allege that every Commissioner held that position at the time of the alleged conduct. Without factual allegations regarding each individual Commissioner's personal conduct, plaintiffs fail to state a personal capacity claim.

But even assuming for the sake of argument that each of the Commissioners is personally responsible for each of the Commission actions alleged by plaintiffs, plaintiffs still fail to state a claim because, taking all of the allegations as true, none of the actions constitutes a constitutional

8

violation. Offering testimony to a legislative committee cannot possibly violate the First Amendment or the Equal Protection Clause, especially when the testimony is accurate. As discussed above, it is a correct statement of Maine law that religious schools approved for tuition purposes cannot discriminate based on sexual orientation when it comes to employment. 5 M.R.S. § 4553(10)(G). And as with their allegations regarding what the State argued in *Carson*, plaintiffs misstate the Commission's testimony. The Commission did not testify that religious schools approved for tuition purposes "lose their religious hiring rights." *See* https://perma.cc/7B9E-2J2X.[2]

Nor is it possible to see how the Commission violated the Constitution by proposing to the legislature that amendments be made to the MHRA's education provisions. Even if these amendments were unconstitutional (and, to be clear, they were not), defendants are aware of no precedent supporting the notion that a person violates the First Amendment or Equal Protection Clause by proposing legislation later determined to be unlawful.

Odder still is plaintiffs' suggestion that the Commissioners are personally liable because the Commission testified in support of a bill repealing a provision exempting single-sex private schools from the definition of "educational institution."[3] Even if it were true, as plaintiffs allege,

---

[2] Plaintiffs attached this document to their Complaint and, in ruling on a motion to dismiss, the court may consider such documents without converting the motion into one for summary judgment. *See, e.g., Freeman v. Town of Hudson*, 714 F.3d 29, 35-36 (1st Cir. 2013); *Stein v. Royal Bank of Canada*, 239 F.3d 389, 392 (1st Cir. 2001).

[3] Until this provision was repealed, the MHRA did not prohibit single-sex schools from discriminating on any basis other than disability. So, for example, such schools were not prohibited from discriminating on the basis of race or national origin. Repealing the provision eliminated this incongruity.

that the Commission did so "for the purpose of trying to strengthen their arguments in *Crosspoint Church*," [4] that would not be a constitutional violation.

Finally, citing to interpretative guidance issued in 2016, plaintiffs allege that the Commission "interpreted the [MHRA's] gender-identity nondiscrimination provision to require a school to facilitate a student's efforts to change his or her gender identity even if the school knows that the student's parents object" and to require schools to use a student's preferred name and pronouns, and if the student so requests, to 'require[]' all employees and 'instruct' other students to do so as well." Complaint, ¶¶ 141-142. [5] Once again, it is impossible to see how providing guidance regarding the interpretation of a state law somehow runs afoul of the First Amendment or Equal Protection Clause.

In sum, the plaintiffs do not make a single allegation regarding the specific conduct of any Maine Human Rights Commissioner. And even if conduct by the "Commission" can be attributed to each Commissioner, the conduct did not violate the Constitution. Plaintiffs thus fail to state a personal capacity claim against any Commissioner.

### *Even if Plaintiffs Did State a Personal Capacity Claim Against Any Defendant, the Defendant is Entitled to Qualified Immunity.*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[Q]ualified immunity

---

[4] This is a reference *to Crosspoint Church v. Makin*, No. 1:23-cv-00146 (D. Me. Apr. 27, 2023), which involves a similar challenge to the application of the MHRA to a religious school.
[5] "Facilitating" a change in gender identify apparently refers to the schools permitting students to dress consistently with their gender identify and using pronouns consistent with their gender identity. https://perma.cc/D5Z3-PMP8.

protects 'all but the plainly incompetent or those who knowingly violate the law.'" *MacDonald v. Town of Eastham*, 745 F.3d 8, 11 (1st Cir. 2014) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"Officials are entitled to qualified immunity unless (1) 'the facts that a plaintiff has alleged or shown make out a violation of a constitutional right' and (2) 'the right at issue was 'clearly established' at the time of [their] alleged misconduct.'" *Walden v. City of Providence*, 596 F.3d 38, 52 (1st Cir. 2010) (quoting *Pearson*, 555 U.S. at 231). "[I]t is not mandatory that courts follow the two-step analysis sequentially." *Maldonado v. Fontanes,* 568 F.3d 263, 269-70 (1st Cir. 2009). The second step has two aspects. "One aspect . . . focuses on the clarity of the law at the time of the alleged civil rights violation" such that "to overcome qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Maldonado,* 568 F.3d at 269 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The other aspect focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." *Id*. Considering the contours of the right at issue and the particular facts of the case, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Id*.

"Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Castagna v. Jean*, 955 F.3d 211, 213 (1st Cir. 2020) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Thus, claims of qualified immunity ought to be resolved at the earliest practicable time." *McKenney v. Mangino*, 873 F.3d 75, 80 (1st Cir. 2017). When a defendant asserts qualified immunity, "[t]he plaintiff bears the burden of demonstrating that the law was clearly

11

established at the time of the alleged violation, and it is a heavy burden indeed." *Mitchell v. Miller*, 790 F.3d 73, 77 (1st Cir. 2015). "[In] order to show that the law was clearly established, a plaintiff has the burden to identify controlling authority or a robust consensus of persuasive authority such that any reasonable official in the defendant's position would have known that the challenged conduct is illegal in the particular circumstances that he or she faced." *Penate v. Sullivan*, 73 F.4th 10, 18 (1st Cir. 2023) (cleaned up).

As is discussed above, plaintiffs have not alleged a constitutional violation. Quite simply, making arguments to a court, testifying before a legislative committee, proposing changes to the law, and offering interpretative guidance do not violate the First Amendment or the Equal Protection Clause. So plaintiffs fail to overcome qualified immunity at the first step. But even if the court were to address the second step, plaintiffs fail there too. Plaintiffs cannot point to any relevant caselaw that could have put the defendants on notice that their alleged conduct was unlawful. Defendants are entitled to qualified immunity with respect to the personal capacity claims asserted against them.

## Conclusion

For the reasons set forth above, defendants respectfully request that plaintiffs' claims against them in their personal capacities be dismissed.

Dated:  August 11, 2023
        Augusta, Maine

Respectfully submitted,
AARON M. FREY
Attorney General

s/ Christopher C. Taub
Christopher C. Taub
Chief Deputy Attorney General
Sarah A. Forster
Assistant Attorney General
Office of the Attorney General
State House Station 6
Augusta, ME 04333
Telephone: (207) 626-8800
Email: christopher.c.taub@maine.gov
       sarah.forster@maine.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 11th day of August, 2023, I electronically filed the above document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.  To my knowledge, there are no non-registered parties or attorneys participating in this case.

/s/ Christopher C. Taub
CHRISTOPHER C. TAUB
Chief Deputy Attorney General
Six State House Station
Augusta, Maine  04333-0006
Tel.  (207) 626-8800
Fax (207) 287-3145
Christopher.C.Taub@maine.gov