UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ST. DOMINIC ACADEMY, a d/b/a of the ROMAN CATHOLIC BISHOP OF PORTLAND, et al.<br><br>    Plaintiffs,<br><br>        v.<br><br>A. PENDER MAKIN, in her personal and official capacity as Commissioner of the Maine Department of Education, et al.,<br><br>    Defendants. | Civil Action No. 23-cv-00246-JAW |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PERSONAL CAPACITY CLAIMS**

Plaintiffs' Opposition to Defendants' Motion to Dismiss makes clear that plaintiffs never had a good faith basis for asserting personal capacity claims for damages against the Maine Human Rights Commissioners and the Maine Department of Education ("DOE") Commissioner. Plaintiffs' challenge is not to the individual actions of any defendant, but to Maine law requiring schools participating in the State's tuitioning program to comply with the Maine Human Rights Act ("MHRA"). Plaintiffs' efforts to hold the defendants personally liable are ridiculous. For example, they seek to hold the DOE Commissioner liable for public statements made not by her, but by the Attorney General and which, in any event, contained nothing actionable. The primary basis for plaintiffs' claims against the Maine Human Rights Commissioners is that some of them allegedly proposed the statutory amendments which plaintiffs now argue are unconstitutional. Plaintiffs cite no case supporting the notion that such conduct can form the basis for personal liability. Nor is there any basis for suing the defendants personally simply because the Attorney General, who is managing this litigation, chose to oppose plaintiffs' preliminary injunction

motion. Finally, while plaintiffs periodically refer to the defendants enforcing or threatening to enforce the MHRA against them, the defendants have done no such thing and the Complaint does not allege otherwise. The personal capacity claims are frivolous and should be dismissed.

Plaintiffs seek to impose personal liability on defendants for making arguments in court, issuing public statements, promulgating interpretative guidance, and proposing and supporting statutory amendments. Plaintiffs fail to state claim because, beyond that such conduct is protected by the First Amendment, these actions simply did not violate any of the plaintiffs' rights. But even if they somehow did, defendants are entitled to qualified immunity because plaintiffs do not cite a single case in which a court held such conduct to be unlawful. So, defendants could not possibly have understood that, for example, proposing an amendment to the MHRA might expose them to personal liability.

Rather than address why the defendants should have been aware that their actions were unlawful, plaintiffs mostly repeat arguments made in their preliminary injunction motion that the MHRA amendments violate the First Amendment. That, though, is largely irrelevant for purposes of the present motion. Even if the amendments are unlawful (and to be clear, they are not), proposing unconstitutional laws is not a basis for personal liability. And even if it were, the existing state of the law made it reasonable for defendants to understand that the amendments were valid (which they are).

The issue of whether the First Amendment prevents Maine from making its broad anti-discrimination law applicable to religious entities accepting taxpayer funds appears to be an issue of first impression. Thus, plaintiffs are simply wrong in claiming that defendants should have known that the MHRA amendments were unconstitutional. While plaintiffs argue that

nine different Supreme Court decisions should have put defendants on notice, these decisions are not sufficiently on point.

In *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017), *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020), and *Carson v. Makin*, 142 S. Ct. 1987 (2022), the Supreme Court held that states could not disqualify entities from receiving generally available benefits solely because of their religious character. But as a result of *Carson*, sectarian schools are no longer disqualified from participating in Maine's tuition program (and one such school is currently participating).[1] Whether Maine can require participating schools to comply with a neutral, generally applicable anti-discrimination law is an entirely different issue, and, to defendants' knowledge, has never been addressed by any state or federal court.

In *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984), *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995), and *303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (2023), the Supreme Court held that in the circumstances of those cases, the application of anti-discrimination laws implicated First Amendment rights to free speech and expressive association.[2] There, though, persons were being forced to express messages (or admit members) against their will. Plaintiffs try to fit themselves within these cases by arguing that because 5 M.R.S. § 4602(5)(D) requires religious schools to permit students to express different religious views, schools are forced to engage in speech with which they disagree.[3] This is simply not so. Any speech would be that of students and not the schools. Indeed, the provision at issue expressly states that it does not "[r]equire[] an educational institution to participate in or endorse

---

[1] Plaintiffs take issue with defendants' pointing out that Cheverus High School is currently participating in the tuition program, claiming that they are "slicing up . . . Catholic orders." Pltf. Opp., at 12. The relevance of Cheverus' participation is that it belies the plaintiffs' broad claim that it would be "impossible for religious schools to participate [in the tuitioning program] while maintaining their religious identity." Pltf. PI M., at 1.
[2] In *Roberts*, the Court held the state's "compelling interest in eradicating discrimination" overrode an organization's right to deny admission to women. 468 U.S. at 623.
[3] Plaintiffs do not appear to argue that the MHRA would require St. Dominic to admit students it does not want.

any religious beliefs or practices." 5 M.R.S. § 4602(5)(D). It is unlikely, then, that St. Dominic would be required to broadcast non-Catholic prayers over its loudspeakers, provide space to "host a non-Catholic revival service," or accede to student demands to "teach religious beliefs that inconsistent with or even hostile to the Catholic faith." Pltf. Opp., at 10-11. But the Court, to resolve this motion, need not decide whether *Roberts*, *Hurley*, and *303 Creative LLC* warrant striking down the religious expression provision. Rather, to the extent the question of whether it was clearly established that the provision was unconstitutional is even relevant, the three cases simply are not sufficiently on point to warrant an affirmative answer to that question.

In *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012) and *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049 (2020), the Supreme Court held that the First Amendment insulates religious organizations from state regulation of their employment relationship with employees qualifying as "ministers." But plaintiffs do not allege that any defendant has ever enforced or threatened to enforce the MHRA against a religious organization relating to a ministerial employee. Plaintiffs apparently seek to impose personal liability on the defendants because they "admit that the [MHRA] violates *Hosanna-Tabor* and *Our Lady* but have not agreed to an injunction on that basis." Pltf. Opp., at 14-15. Defendants made no such admission. What they said is that the MHRA cannot be <u>applied</u> with respect to employees qualifying for the ministerial exception. Def. Opp. to PI Mot. (Docket Item 25), at 9-10.[4] Since there is no dispute on that point, there is no basis for injunctive relief. And, in any event, defendants are aware of no support for the notion that a state official can be personally liable under Section 1983 for not acceding to entry of injunctive relief.

---

[4] The ministerial exception is an affirmative defense. *Hosanna-Tabor*, 565 U.S. at 195 n.4

Plaintiffs cite *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) for the proposition that "state officials cannot create a web of rules designed to filter out the religious practices they dislike." Pltf. Opp., at 14. There is no "web" here – all primary and secondary schools receiving public funds (whether religious or not) are subject to the applicable provisions of the MHRA. The fact that some religious schools might find it more difficult to comply with those provisions because of the tenets of their particular religions does not mean that they have been singled out because of disapproval of their religious practices. But again, the question now (if even relevant) is not whether the MHRA provisions are unconstitutional under *Lukumi*, but whether that case reasonably could have put defendants on notice that their alleged actions were unlawful. The answer to that is "no." [5]

Plaintiffs argue that the Commissioners can be held personally liable "because of what they are doing right now – enforcing an unconstitutional law. . . ." Plf. Opp., at 2; *see also id.*, at 8 ("[The Commissioners are each individually responsible for what they are doing now to use the very unconstitutional law they helped to create to exclude religious schools from the program.") (emphasis in original). But the Complaint does not contain a single allegation that the Commissioners are, in fact, doing anything to enforce the MHRA against plaintiffs or to somehow use the law to prevent St. Dominic from participating in the tuition program. Nor is there any allegation that they have threatened enforcement action. [6] St. Dominic has apparently

---

[5] Plaintiffs allege that the Maine Human Rights Commissioners acted unlawfully by "scrambl[ing]" to remove the exemption for single-sex schools to prevent it from "jeopardize[ing]" their legal arguments in this case and a similar one. Pltf. Opp., at 5. As defendants have previously explained, the exemption was an obvious mistake that needed to be corrected. Nor is there anything unlawful about correcting a flaw that makes a statute vulnerable to attack.
[6] Plaintiffs seem to acknowledge that the Maine Human Rights Commissioners have neither enforced nor threatened to enforce the MHRA but claim that they can nevertheless be held personally liable because they are "tasked with enforcing and fully intend[] to enforce the law they fought for." Plf. Opp., at 8. That is absurd – there is no basis for imposing personal liability on state officials simply because they have a particular responsibility, even if they state they intend in the future to carry out that responsibility. Moreover, it is impossible to see how the plaintiffs could know what any Commissioner intends to do, and there are no allegations as to that anyway.

decided that it does not want to participate in the tuition program if it will then have to comply with the MHRA.  No Commissioner has taken a single action against any plaintiff, and the plaintiffs do not allege otherwise.[7]

Plaintiffs seek to hold the DOE Commissioner personally liable for public statements she supposedly "made through counsel" where she "pledged . . . to continue to work to exclude certain religious schools using the [MHRA]." Pltf. Opp., at 5, 8.  This is preposterous.  Most fundamentally, they were the Attorney General's public statements, were clearly identified as such, and nothing in them suggests that he was speaking for or on behalf of the Commissioner.  See https://perma.cc/BGL4-YHLY; https://perma.cc/544J-DAFN.  Moreover, the Attorney General was not representing the Commissioner in *Carson*.  Rather, the Commissioner was sued only in her official capacity, and the Attorney General was thus representing the State.  There is no basis for ascribing every public statement the Attorney General chose to make about the *Carson* case to the Commissioner.  The cases cited by plaintiffs are inapposite because in those cases, the attorneys were clearly acting or speaking solely within the scope of their representative capacities.  *Nansamba v. N. Shore Med. Ctr., Inc.*, 727 F.3d 33, 38 (1st Cir. 2013) (attorney's neglect in not reviewing documents was attributed to client); *United States v. Negron-Narvaez*, 403 F.3d 33, 39 (1st Cir. 2005) (client adopted admissions when attorney made them in open court in presence of client and client then verified the statements); *Laird v. Air Carrier Engine Serv., Inc.*, 263 F.2d 948, 953-54 (5th Cir. 1959) (holding that when an attorney speaks in court, he speaks on behalf of the client).

---

[7] Plaintiffs apparently seek to impose personal liability against the Maine Human Rights Commissioners because they have not "disavow[ed] enforcement" of the challenged provisions.  Pltf. Opp., at 9.  While disavowing enforcement might mean that there is no justiciable controversy, defendants are aware of no support for the proposition that state officials can be held personally liable if they do not disavow enforcement.

But even if the Attorney General's statements could somehow be attributed to the DOE Commissioner, plaintiffs' argument still fails.  First, the statements are protected First Amendment speech.  Second, the Attorney General said nothing about pledging to to exclude religious schools from the tuition program.  Rather, in a statement made on the day the Supreme Court issued the *Carson* decision, the Attorney General said that he would explore statutory amendments to prevent public funds from using to promote discrimination.  *See* https://perma.cc/544J-DAFN.  Finally, defendants are aware of no support for the proposition that public statements of the nature at issue here, by themselves, can form the basis for Section 1983 liability.

Finally, it is worth pointing out that in the Complaint, plaintiffs make allegations not against any specific Commissioner, but against the entire "Commission."  As even a cursory investigation would have revealed, and as plaintiffs now acknowledge, not all of the Commissioners were serving at the time of the alleged actions.  Pltf. Opp., at 3 n.2.  None of them were serving when the challenged interpretative guidance was issued in 2016 and only three of them were serving when the challenged 2021 MHRA amendments were proposed.  *Id*.  Nevertheless, plaintiffs made no effort to distinguish among Commissioners in their Complaint, and this further highlights the absence of any good faith basis for their personal liability claims.[8]

## Conclusion

For the reasons set forth above, defendants respectfully request that plaintiffs' claims against them in their personal capacities be dismissed.

---

[8] Remarkably, plaintiffs apparently believe that they can make allegations against all of the Commissioners, and it is then the Commissioners' duty to "come forward with evidence to exonerate him or herself at the appropriate time."  Pltf. Opp., at 8-9.  It was the plaintiffs' duty, though, to ensure that they had factual support for each of their allegations.  If they did not have support that each Commissioner engaged in the alleged actions, they should not have made collective allegations.

| | |
|---|---|
| Dated:  September 13, 2023<br>Augusta, Maine | Respectfully submitted,<br>AARON M. FREY<br>Attorney General<br><br>s/ Christopher C. Taub<br>Christopher C. Taub<br>Chief Deputy Attorney General<br>Sarah A. Forster<br>Assistant Attorney General<br>Office of the Attorney General<br>State House Station 6<br>Augusta, ME 04333<br>Telephone: (207) 626-8800<br>Email: christopher.c.taub@maine.gov<br>          sarah.forster@maine.gov<br>*Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 13th day of September, 2023, I electronically filed the above document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.  To my knowledge, there are no non-registered parties or attorneys participating in this case.

/s/ Christopher C. Taub
CHRISTOPHER C. TAUB
Chief Deputy Attorney General
Six State House Station
Augusta, Maine  04333-0006
Tel.  (207) 626-8800
Fax (207) 287-3145
Christopher.C.Taub@maine.gov